[No. 21933.  In Bank.—September 13, 1894.]

## THE PEOPLE, RESPONDENT, v. GEORGE KILVINGTON, APPELLANT.

CRIMINAL LAW—HOMICIDE BY ARRESTING OFFICER—AUTHORITY TO ARREST—CRIMINAL NEGLIGENCE.—Upon the trial for murder of a defendant who was a police officer at the time of the homicide in order to determine whether his act was excusable or not, the jury must determine whether he was justified in determining to arrest the deceased, and if so, whether the act of shooting merely for the purpose of intimidating and causing the deceased to stop, and without intention of killing or wounding him, was or was not criminal negligence.

ID.—AUTHORITY OF POLICE OFFICER.—A police officer has the right, without a warrant, to arrest any person in the night, when the officer has reasonable ground to believe that such person has committed a felony.

ID.—PROBABLE CAUSE—QUESTION OF LAW.—The question whether the arresting officer had probable cause to believe, or reasonable ground for suspicion, that a felony had been committed by the deceased ought not

to be submitted to the jury, but is a question of law to be determined by the court.

ID.—WHAT CONSTITUTES PROBABLE CAUSE FOR ARREST.—There is probable cause for arrest when there is such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty of the offense charged.

ID.—ARREST OF FLEEING PERSON CHARGED WITH THEFT.—The view at night of a person fleeing from one who is shouting "stop thief!" affords a police officer as much reason to suspect or believe that he may have committed robbery, or burglary, or grand larceny, as to suppose that he had merely committed petit larceny, and the officer is justified in attempting to arrest such fleeing person.

ID.—CRIMINAL NEGLIGENCE—QUESTION OF FACT—REASONABLE DOUBT.— The question whether upon an attempt of the officer to arrest the deceased, the act of shooting at the deceased with a view to intimidate him and cause him to stop, and with the intention of firing over his head, was or was not an act of criminal negligence, is properly a question of fact to be determined by the jury, in the decision of which the defendant is entitled to the benefit of any reasonable doubt arising upon the evidence.

ID.—EVIDENCE—PRESENCE OF DECEASED ON LAWFUL BUSINESS.—Where it appears that the defendant in arresting the fleeing person did not recognize the deceased at the time of the shooting, or know any thing about his business, evidence tending to show that the deceased went to the place near where he was shot on that particular night on lawful business is irrelevant and inadmissible.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial.

The defendant, George Kilvington, was informed against by the district attorney of Santa Clara county for the crime of murder, alleged to have been committed at said county on the third day of May, 1892, by the felonious killing of one Henry Schmidt. The defendant was convicted of manslaughter, and adjudged to be punished by imprisonment in the state prison of the state of California, at San Quentin, for the term of seven years. This appeal is from the final judgment and from an order denying a motion for a new trial. It appears that the defendant was night watchman in Chinatown, San Jose, and was, as the court instructed the jury, a police officer of the city of San Jose. On the night of the third day of May, 1892, he had been at Chinatown with one Henry Burgess for the purpose

of showing the latter through a cannery. On their return from the cannery, about nine o'clock in the evening, and when on Taylor street, they heard some one cry "stop thief!" two or three times, and, upon looking around, they observed two men running across a vacant lot or open ground fronting on the street northerly and diagonally to their course, in a direction which, if continued, would have taken them across defendant's line of travel twenty feet or more ahead of defendant and his companion. The two men running were not together, but one was in advance, and the other pursuing him, and crying out "stop thief!" according to the testimony of the defendant. The night was dark, but the parties were visible at some distance. Defendant ordered the man in advance to stop, and repeated the order two or three times. The order was not obeyed, but the stranger threw up his hands, when, as defendant claims, he saw something in his hands, and he drew his own pistol and fired, killing the man, who at the time was, say, thirty feet distant. The man fell upon his face, and upon examination proved to be one Henry Schmidt, and he had no weapons upon his person. Defendant did not, so far as appears, recognize deceased before firing the fatal shot, and did not consider himself in danger, but, as he testifies, intended to arrest the deceased, and for the purpose of intimidating and stopping him attempted to shoot over his head, but the deceased being upon higher ground, about two or three feet, the ball entered his neck. Upon this point the defendant testified: "My object in ordering him to stop was to see why he was running away, what he had done. I thought he was some criminal, some thief, some sneak-thief, or something of that kind, that time of night to see a man running and another man chasing him, calling 'stop thief!' I intended to find out, to investigate, and see what it was. I had every cause to believe by the calling of 'stop thief!' that he was a criminal, and my object was to arrest him. I fired to intimidate him, and I endeavored to shoot over his head. . . . . I heard

a man call 'stop thief!' and I couldn't tell whether this
man had stolen a loaf of bread or robbed a bank."
And in another part of his testimony he said: "For all
I know, this man might have committed a murder or
robbed some one. I don't know what he was guilty of.
I could not judge. All I know, the man was running
after another, hollering 'stop thief! stop thief!'" The
man in pursuit of the deceased was one William H.
Howard. The testimony of the latter was lengthy, but
may be epitomized as follows: He was passing the
house of one Mrs. Hayford, when the deceased ran out
of the back yard, and the witness, thinking he was a
criminal, pursued him, crying "stop!" or "stop thief!"
for some distance, with the result as above stated.

*William P. Veuve*, for Appellant.

*Attorney General W. H. H. Hart, V. A. Scheller*, and
*Spencer & Burchard*, for Respondent.

DE HAVEN, J.—There is no conflict in the evidence as
to the circumstances under which the defendant killed
the deceased, and, in order to determine whether his
act was excusable or not, it was necessary for the jury
to consider, first, whether the defendant was justified in
attempting to arrest the deceased at all; and, if so,
whether the act of shooting merely for the purpose of
intimidating, and thus causing the deceased to stop, and
without any intention of killing or wounding him, was
or was not criminal negligence. It was important to the
defendant to have these questions, and the law in rela-
tion to each, clearly and separately stated to the jury.
The court correctly instructed the jury that a peace offi-
cer has the right without a warrant to arrest any person
in the night, when the officer has reasonable ground to
believe that such person has committed a felony. (Pen.
Code, sec. 836; *Burns* v. *Erben*, 40 N. Y. 463.) But the
court erred in the manner in which it submitted the
question of probable cause to the jury. Upon this point
the court gave the following instruction: "It is for the

jury to determine from all the facts and circumstances of the case whether the defendant had reasonable cause to believe that a felony had been committed by the deceased. If you find from the evidence that he had such cause for belief, you will then determine whether, in the attempt to arrest the deceased, he used only such means as were necessary to prevent the escape of the deceased, and to effect his arrest."

This instruction submitted to the jury the entire question in reference to the existence of probable cause upon the part of the defendant to arrest the deceased, and that body was called upon not only to find whether the facts relied upon by the defendant to show such probable cause were true, but also, if true, to determine whether or not they were legally sufficient for that purpose. The instruction was erroneous, as it is not the province of the jury to decide in any case whether the facts and circumstances which they may find established by the evidence are sufficient to constitute probable cause. This principle of law is now settled beyond doubt or controversy, as a reference to a few of many cases which might be cited on that point will show. "This question of probable cause, or reasonable ground for suspicion, whether it arises in actions for malicious prosecution or false imprisonment, is one of law, unless the evidence out of which it arises is conflicting, in which event it is the duty of the court to instruct the jury what facts, if established, will constitute probable cause, and submit to them only the question as to such facts." (*Burns* v. *Erben*, 40 N. Y. 463; *Bulkeley* v. *Keteltas*, 6 N. Y. 384; *Masten* v. *Deyo*, 2 Wend. 425; *Pangburn* v. *Bull*, 1 Wend. 345; *Driggs* v. *Burton*, 44 Vt. 124; *Panton* v. *Williams*, 2 Ad. & E., N. S. 169; *Sutton* v. *Johnstone*, 1 Term Rept. 493, 545.) And our predecessors in passing upon the same question in *Harkrader* v. *Moore*, 44 Cal. 152, said: "The authorities are substantially uniform that the question of probable cause, however presented, is a question of law, and therefore one to be determined by the court. When the facts in reference to the alleged probable cause are admitted or established

beyond controversy, then the determination of their
legal effect is absolute, and the jury are to be told that
there was or was not probable cause, as the case may be.
When, however, the facts are controverted and the evi-
dence is conflicting, then the determination of their
legal effect by the court is necessarily hypothetical, and
the jury are to be told that if they find the facts in a
designated way, then that such facts, when so found, do
or do not amount to probable cause." The same rule is
also announced in *Grant* v. *Moore*, 29 Cal. 644; *Fulton*
v. *Onesti*, 66 Cal. 575; and in the late case of *Ball* v.
*Rawles*, 93 Cal. 222; 27 Am. St. Rep. 174, where the
whole question is elaborately discussed.

As already stated, the facts in this case were undis-
puted, and the court ought, therefore, to have instructed
the jury as to their sufficiency in law to justify the
defendant in attempting to arrest the deceased; that is,
whether they were legally sufficient to induce a reason-
able belief in the mind of the defendant that the deceased
had committed a felony.   The defendant requested the
following charges upon this point:

"12. The court instructs the jury that, if the defend-
ant saw the deceased running at night, pursued by
Howard, and Howard was crying out 'stop!' or 'stop
thief!' and the deceased on being ordered to stop by the
defendant two or three times, and refusing to do so, but
continuing his flight, then the defendant had reasonable
cause to believe the defendant (deceased) had committed
a felony."

"14. The court instructs the jury that the uncontra-
dicted evidence in this case shows that the defendant
had reasonable cause to believe at the time of the killing
that the deceased had committed a felony."

The refusal of these instructions presents the most
important question of law arising upon this appeal, as
it is manifest that if either one had been given (the
facts recited in the first one being established without
any conflict whatever in the evidence), the inquiry of
the jury would have been restricted to the single ques-

tion whether the defendant exercised due care and caution in what he did in attempting to effect the arrest of the deceased; or, stated in another form, the question before the jury would have been, Was the shooting in the direction of deceased, for the mere purpose of intimidation, without any intention of killing him, an act of criminal negligence upon the part of the defendant? The refusal of the court to thus narrow the inquiry was clearly prejudicial to the defendant, if, under the undisputed facts, he had, in the judgment of the law, probable cause to arrest the deceased, for the jury may have found the defendant guilty because in their judgment the facts were not sufficient to justify him in attempting to make such arrest; and this brings us to the consideration of the question, Did the defendant, in view of the facts as presented to him at the time, have reasonable or probable cause to believe that the deceased had committed a felony?

There is a substantial agreement in the decisions of the courts as to what constitutes probable cause or reasonable cause such as will justify one in arresting or prosecuting another upon a criminal charge; and perhaps as clear and comprehensive a statement of the rule as can be found is that of Shaw, C. J., in *Bacon* v. *Towne*, 4 Cush. 217: "There must be such a state of facts," said he, "as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty." Applying this rule to the facts of this case, we think it must be held that the defendant had reasonable cause to believe that the deceased may have committed a felony. It is true the deceased was not charged in terms with the commission of a felony, but this was not necessary in order to justify the defendant in entertaining a reasonable suspicion that he was guilty of a felony. It was night; the deceased was fleeing, pursued by a person who was shouting "stop thief!" This was in effect a charge that the deceased had committed a theft of some kind, and the defendant had just as much reason to suspect or

believe that the deceased may have committed robbery, or burglary, or grand larceny, as to suppose that his pursuer only meant by the cry of "stop thief!" to charge him with petit larceny.  The defendant was called upon to act promptly, and, as the language used by the witness Howard was broad enough in its popular sense to import a charge of felony, the defendant was justified in attempting to arrest the deceased.  An officer who would refuse to arrest a person fleeing and pursued under the circumstances disclosed in this case, because the charge was not more direct and specific as to the commission of a felony, would be justly censurable for a neglect of official duty.  In considering this question of probable cause upon the part of the defendant to arrest the deceased, we are to look only at the facts and circumstances presented to him at the time he was required to act.  The defendant did not recognize the deceased before he fired, and the fact that the latter was an innocent and respectable citizen, and who may have been fleeing from an assailant, cannot be allowed to affect the question we are now discussing.

It is only necessary to add upon this point that in our opinion the court ought to have instructed the jury that the defendant had the right, under the circumstances established by the evidence, to arrest the deceased, leaving the jury to determine the further question whether the act of shooting the deceased in attempting to effect such arrest was or was not an act of criminal negligence upon the part of the defendant.  This latter is purely a question of fact, and its determination must be left to the sound judgment and discretion of the jury, and in the decision of which question the defendant is entitled to the benefit of any reasonable doubt arising upon the evidence.

The court also erred in admitting the evidence of the witnesses Schloss and Weissel tending to show that deceased went down to the place near where he was shot on that particular night on lawful business.  This fact was wholly irrelevant.  The defendant knew nothing of

the matter, and did not recognize the deceased at the time of the shooting. The evidence, therefore, was wholly irrelevant, as it threw no light whatever upon the question whether the defendant was justified in attempting to arrest the deceased under the circumstances as actually presented to him; nor did it have any bearing upon the question whether or not the defendant was guilty of criminal negligence in shooting the deceased.

The motion of defendant to set aside the information was properly denied, and the court did not err in refusing to give the instructions numbered 2, 3, 15, 18, and 24, requested by the defendant.

We do not deem it necessary to notice the other points discussed in the brief of counsel.

Judgment and order reversed, and cause remanded for a new trial.

FITZGERALD, J., McFARLAND, J., HARRISON, J., GAROUTTE, J., VAN FLEET, J., and BEATTY, C. J., concurred.