[Crim. No. 6570.   Second Dist., Div. Two.   Aug. 13, 1959.]

THE PEOPLE, Respondent, v. HOWARD LEE HOLLINS, Appellant.

Harold J. Ackerman, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

HERNDON, J.—Appeal from a judgment convicting appellant of possession of marijuana and from the order denying his motion for a new trial.

The sole question presented is whether, independently of information imparted to them by a confidential informant, the arresting officers had reasonable cause to make the search which resulted in the officers' discovery of narcotics concealed upon appellant's person. The trial judge answered this question in the affirmative, and we have concluded that his determination is adequately supported by substantial evidence.

Early in January, 1958, Officer Peters of the Los Angeles Police Department received information from a reliable informant that appellant was dealing in narcotics. The officer was told that appellant was "still dealing" and that "you can buy most anything you want from him."

Officer Peters testified that prior to the date of arrest in question he was acquainted with appellant and that appellant "was known to him as being connected with narcotics." The officer previously had arrested appellant for being under the influence of narcotics and on that occasion had observed fresh needle marks on his arm. The officer had checked appellant's past criminal record which included former convictions of possession of narcotics and forgery. Immediately prior to making the instant arrest and search, the officer had observed appellant standing in the company of one Walter Scott, a known narcotics addict, and certain other persons described by the officer as being of "unsavory" reputation. Scott had admitted to Officer Peters that he was a user of heroin. In regard to appellant's other companions, as appellant points out, the officer "based his impression of their character on the fact that they hung around so-called disreputable parts of the area." During the month preceding the date of the arrest the officer had seen appellant in the company of another known narcotics addict, a female, at a place within 50 feet of the place of the arrest here in question.

On the night of January 10, 1958, the officers were cruising in an unmarked police car in the Watts area of Los Angeles County in a vicinity apparently frequented by sellers and users of narcotics. Observing appellant standing with his hands in his pockets and in the company of the said Scott and

the other persons above mentioned, the officers decided to find out "what he had in his pockets." On cross-examination, Officer Peters testified as follows: "Q. Well, now, what cause did you have for wanting to go find out what was in his pockets? A. I was suspicious of the man's activity concerning narcotics in the area. Q. Well, tell us now, what did you observe him do on the night of January 10th, 1958, at or about 8:00 o'clock that was suspicious to you? A. My understanding was he was standing in the company of one of the known narcotic users and several other unsavory persons. Q. Who was the known narcotic user he was standing in the company of? A. I think his last name is Scott."

After testifying that he previously had arrested Scott for being under the influence of narcotics, Peters was asked why he regarded appellant's other companions as "unsavory persons." He replied: "Just reputation, numerous times I had seen them in the area, they were either drunk, or hanging around in some of the more disreputable parts of the area." When asked on cross-examination "in what manner was this defendant known to you?" Peters responded: "By our previous contacts on the street in this immediate vicinity, all of them being within three blocks of this area; our prior conversations, or my prior conversations with the defendant; physical condition of the defendant on one prior occasion in particular and checking of his past criminal record."

The officers approached appellant from behind and took him unawares. When they reached him, one of the officers announced "It is us, Howard, the police" and each officer grabbed a wrist, removing his hands from his pockets. Peters had appellant open his left hand and found that he was holding a white tablet which the officer said was similar in size and in the peculiar manner of its scoring to a benzedrine pill. Contrary to the officer's suspicions, however, the pill was later found to be without narcotic properties.

After observing the white pill the officers informed appellant that he was under arrest "on suspicion of narcotics." A further search of defendant's person revealed 11 marijuana cigarettes. According to Officer Peters, "[w]e asked him where he got the cigarettes and what type of cigarettes they were. He said they were marijuana cigarettes; that he had had a friend make a score for him, I believe he paid $2.50 for 18 cigarettes and that he was not peddling them; that he was smoking them himself. He had smoked three of them, of the 18 and the remainder is what we found on his person."

When asked by appellant's counsel what his further search was "based upon" Peters testified: "My prior knowledge of the defendant; knowledge of his prior arrests; his habits; the people he associates with; the information we had received from the particular informant referred to in the earlier transcript; plus other questions we had asked and the circumstances that were there that night particularly, him standing in a position that he was, which it made it advantageous for us to approach him without being seen and the grabbing of the defendant by the hands and finding a white pill. They all made up the reasons for the search."

During the course of the trial, appellant's counsel asked for the name of the informant, and on the officer's refusal to disclose the name, counsel moved to strike all of the officer's testimony. The trial court denied the motion holding that the actions of the officers in making the arrest and search were reasonably justified in the light of the attendant circumstances and in the light of the facts known to the officers, disregarding the statement of the confidential informant. The comments of the learned trial judge made at the time of his ruling demonstrate that he understood and applied the controlling rules of law hereinafter restated.

"[W]hen the prosecution seeks to show reasonable cause for a search by testimony as to communications from an informer, either the identity of the informer must be disclosed when the defendant seeks disclosure or such testimony must be struck on proper motion of the defendant." (*Priestly* v. *Superior Court,* 50 Cal.2d 812, 819 [330 P.2d 39].) **[2]** But disclosure is not required where there was a reasonable cause for a search *apart* from the informer's communication which led the police to suspect the defendant. (*People* v. *Williams,* 51 Cal.2d 355, 359 [333 P.2d 19] ; *People* v. *Amado,* 167 Cal. App.2d 345, 348 [334 P.2d 254] ; *cf. Scher* v. *United States,* 305 U.S. 251, 254 [50 S.Ct. 174, 83 L.Ed. 151].)

Thus the question is whether, apart from the statements of the confidential informant, the officers had reasonable cause to search the defendant at the time in question. As we recently stated, in *People* v. *Jackson,* 164 Cal.App.2d 759, 761 [331 P.2d 63] : "In considering the question of reasonable or probable cause for action by the police, the court looks to the facts and circumstances presented to the officer at the time he was required to act. (*People* v. *Paul,* 147 Cal.App.2d 609, 617, 619 [305 P.2d 996] ; *People* v. *Kilvington,* 104 Cal. 86, 93 [37 P. 799, 43 Am.St.Rep. 73] ; *People* v. *Hupp,* 61

Cal.App.2d 447, 449 [143 P.2d 84].)'' ▮ We are here concerned only with the validity of the search and "it is not significant whether the search precedes or follows the arrest." (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531].)

▮ Reasonable cause has been defined by our Supreme Court as such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest, strong suspicion, that the person in question is guilty of a crime (*People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967] ; *People* v. *Kilvington, supra,* 104 Cal. 86, 92). ▮ Probable cause has been defined as a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true (*People* v. *Brite,* 9 Cal.2d 666, 687 [72 P.2d 122] ; see *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 184 [281 P.2d 250] ; *United States* v. *Bell,* 48 F.Supp. 986; *Cook* v. *Singer Sewing Machine Co.,* 138 Cal.App. 418, 422 [32 P.2d 430] ). ▮ There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances. (*Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374].)

▮ The trial court's finding of reasonable cause is sustained by the above recited combination of the facts known to the officer and the circumstances appearing at the time of the arrest. There would seem to be no injustice in holding that appellant's past criminal record provided one of the several facts constituting the justification for the reasonable suspicions which the officers entertained when they acted. Appellant made his own criminal record and established his own connections with the insidious traffic in narcotics. He cannot reasonably expect to be wholly divorced from that record, nor can he reasonably expect officers of the law completely to disregard it when in the course of their duties they have occasion to observe his actions. Neither can appellant be heard to complain that the officers took into account the fact that at the time of his arrest he was in the company of a known narcotic addict in an area in which the nefarious trade was known to flourish, and that but a few weeks previously he had consorted with another addict in the immediate vicinity.

Our strong devotion to the cherished principle that the citizen shall not be subjected to unreasonable treatment at the hands of the agents of society must be tempered with some reasonable appreciation of the facts of life and of the great dangers and difficulties which beset the officer of the law in

his effort to protect the community from the blighting scourge of the narcotic traffic.

The judgment and the order appealed from are affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 7, 1959. Traynor, J., Schauer, J., and Peters, J., were of the opinion that the petition should be granted.