BURKE, P. J.
 

 The People appeal from an order of the superior court of August 16, 1961, granting defendant’s motion, under section 995 of the Penal Code, to set aside an information charging defendant with one count of violating section 11530 of the Health and Safety Code, to wit, possession of marijuana, a narcotic.
 

 On November 17, 1961, the People filed an opening brief and on March 29,1962, defendant was given notice as specified in rule 17(b), California Rules of Court.
 
 *
 
 Defendant has not filed a brief or a request for hearing as provided in the rules. After decision by this court on June 6, 1962, a rehearing was granted on June 21, 1962, and the matter was resubmitted upon the record and briefs on file.
 

 At approximately 11:50 p. m. on June 18, 1961, Police Officer Lamoreaux was in a police vehicle with his partner. He recognized the driver of another vehicle as being Samuel Twitty, who was wanted for assault with a deadly weapon. He had received information concerning Twitty from the files in the detective bureau, which also gave the name of a female suspect, Gladys Donaldson.
 

 The police car proceeded to turn behind the other vehicle and stopped it. At the preliminary hearing the officer stated that prior to stopping the vehicle he “observed there were three ladies in the back seat and you could see some arms and movement in the back seat that didn’t seem to appear normal.” By “normal” he explained he meant “it was not usual.” After stopping the vehicle the officers had Twitty get out and made a cursory search of him for a weapon. In the assault with a deadly weapon charge the weapon used was a large pocket knife. The officers were unable to find the knife either on Twitty or in the vehicle. The officer then asked the three ladies to step out of the car and asked them “if they would mind opening their purses.” He also asked them for identification. He did not recall at what point he found out which of the three ladies was Gladys Donaldson. His purpose in asking
 
 *191
 
 them to open their purses was to see if any one of them contained a large switchblade knife.
 

 The officer said defendant “just opened her purse and then stated, ' There is nothing in here, ’ or something, and moved her hand back and forth, and moved the articles around in the purse.” He did not see any knife in the purse, but on the bottom he stated he saw ‘‘ a red capsule which had some silver foil wrapped around it. This appeared to be a seeonal, which is commonly known as a red devil.”
 

 The officer removed the object from the purse and asked her where she had obtained it. She stated that she had had a prescription for the pills and was taking them to help her lose weight. The officer asked if she had the prescription with her and she stated that she did not. At that point he placed her under arrest. He then cheeked further into her coin purse and found a round white pill that to him appeared to be a Benzedrine tablet. She stated she did not remember where she got it but did recall asking someone for an aspirin, and she believed that it was at that time they gave the pill to her. Defendant was then taken to the police station and thoroughly searched by a policewoman who found three brown-wrapped cigarettes, later determined to be marijuana, in her brassiere.
 

 No prosecution resulted with respect to Twitty or Miss Donaldson. The officer stated that the complaining party had dropped the charges. Neither was any prosecution filed with respect to the capsule or the white pill found in defendant’s purse. Defendant was prosecuted for possession of the marijuana which was discovered subsequent to her arrest.
 

 The principal question involved on this appeal is whether the police had probable cause to believe that defendant had committed a misdemeanor in their presence, namely, possession of seconal in violation of Business and Professions Code section 4230, prior to the arrest and the second search at the police station at which the marijuana was found.
 

 It has been established that a search is not unlawful merely because it precedes rather than follows the arrest.
 
 (People
 
 v.
 
 Simon,
 
 45 Cal.2d 645, 649 [290 P.2d 531].) In this case, as in
 
 People
 
 v.
 
 Simon, supra,
 
 there was no evidence of anything apparent to the officer’s senses before the search and arrest that defendant was committing or attempting to commit an offense in his presence. The testimony of the police officer as to what he observed in the back seat of the automobile merely stated a conclusion with nothing factual from which the court could determine that his actions were reasonable. We
 
 *192
 
 hold that the actions of defendant in no way justified the police to search her person or property at the time of the arrest without her consent.
 

 The California Supreme Court in
 
 People
 
 v. Brown,
 
 45
 
 Cal.2d 640, 643-644 [290 P.2d 528], said: “The United States Supreme Court has consistently held that a search, whether incident to an arrest or not, cannot be justified by what it turns up. [Citations.] If, therefore, it is necessary to rely on the search to justify the arrest, the conclusion is inescapable that a search that cannot be justified by what it turns up cannot justify the arrest. Moreover, whether or not the arrest of a guilty defendant is lawful, it is clearly unreasonable if the officer has no ‘reasonable cause’ to believe the defendant guilty, and a search incident thereto can be no more reasonable than the arrest itself. ’ ’
 

 Similarly, in this case the fact that the search of defendant’s person ultimately disclosed that she possessed a narcotic cannot justify a search or arrest which is without legal foundation. The exclusionary rule of
 
 People
 
 v.
 
 Cohan, 44
 
 Cal.2d 434, 439 [282 P.2d 905, 50 A.L.R.2d 513], must be brought into operation at this point to protect not solely the rights of defendant before this court but primarily the constitutional rights of all persons to be secure in their homes, persons and effects.
 

 It is the contention of the People that the magistrate could have concluded that defendant voluntarily disclosed to the police officer by consenting to the search of her purse that she was in possession of seeonal. The testimony of the officer was that defendant “gladly opened her purse.” As stated in
 
 People
 
 v.
 
 Gorg, 45
 
 Cal.2d 776, 782 [291 P.2d 469], “Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority is a question of fact to be determined in the light of all the circumstances. ... When the People seek to justify a search on the ground that consent thereto was given, they have the burden of proving consent. [Citations.]” In this case the consent given is susceptible of two interpretations; one, that it was involuntary having been given in compliance with an order from one in authority; the other, that it was voluntary.
 

 Of the two interpretations it is apparent that the committing magistrate adopted the latter construction. As is said in
 
 Perry
 
 v.
 
 Superior Court,
 
 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529] :
 

 
 *193
 
 “It is axiomatic that in considering the propriety of a motion to set aside an information pursuant to section 995 of the Penal Code, the reviewing court may not substitute its judgment as to the weight of the evidence for that of the committing magistrate. And if there is some evidence in support of the information, the court will not inquire into the sufficiency thereof. [Citations.]
 

 “Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate’s order. [Citation.]”
 

 To the same effect is De
 
 Mond
 
 v.
 
 Superior Court,
 
 57 Cal.2d 340, 345 [19 Cal.Rptr. 313, 368 P.2d 865] :
 

 “. . . The credibility of witnesses at the preliminary examination, of course, is a question of fact within the province of the committing magistrate to determine, and neither the superior court nor an appellate court may substitute its judgment as to such question for that of the magistrate. [Citations.] ”
 

 Applying these principles to the instant ease, we hold, therefore, that the search of defendant’s purse was voluntary.
 

 We then pass to what the search revealed. When the officer stated he saw a “red capsule which had some silver foil wrapped around it” we are left in a state of conjecture as to when he actually discovered the capsule. If it was entirely wrapped, then clearly the officer was not justified in conducting a further exploratory search. He was seeking a large switchblade knife and it is only if in such search he saw something which was clearly contraband or suspiciously so that as a reasonable man he would have not only had the right but the duty to examine further. There is nothing about a tinfoil-wrapped object in the bottom of a woman’s purse which would establish such right or duty. (See
 
 People
 
 v.
 
 Simon, supra,
 
 45 Cal.2d 645, 649; and
 
 People
 
 v.
 
 Brown, supra,
 
 45 Cal.2d 640, 642.) On the other hand, if the capsule was only partially wrapped, and the officer could see that it had the appearance of a “red devil,” then he was entirely right in recovering it from the purse and examining it further. (See
 
 People
 
 v.
 
 Jackson,
 
 164 Cal.App.2d 759, 762 [331 P.2d 63]; and
 
 People
 
 v.
 
 Ball,
 
 162 Cal.App.2d 465, 467 [328 P.2d 276].)
 

 At this stage of the proceedings, as indicated above, we are bound by the committing magistrate’s determination of
 
 *194
 
 this factual issue and since one possible and reasonable interpretation of the officer’s testimony is that the officer actually saw sufficient of the capsule in its wrapping to determine that it was probably, or possibly, contraband we may not substitute our judgment for that of the magistrate. Having found that the arrest was lawful, it folloAvs that the search at the police station was likewise lawful.
 

 The order granting the motion to dismiss the information under Penal Code section 995 is reversed.
 

 Jefferson, J., and Balthis, J., concurred.
 

 *
 

 Formerly Rules on Appeal, rule 17(b).