[Crim. No. 12455. Second Dist., Div. Four. Mar. 21, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. DELMER ALLEN, Defendant and Appellant.

Molly H. Minudri, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward J. Horowitz, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant, after a jury waiver and submission on the transcript of his preliminary hearing, was found guilty by the court of possession of heroin. (Health & Saf. Code, § 11500.) Criminal proceedings were suspended and he was committed (pursuant to Welf. & Inst. Code, § 3051), to the California Rehabilitation Center for treatment. He was subsequently found by the Director of Corrections (under Welf. & Inst. Code, § 3053) not to be a fit subject for treatment and was returned to the trial court where criminal proceedings were resumed. The court denied probation and sentenced him to prison. In this appeal from the judgment of conviction, defendant contends (1) that the evidence which convicted him was the product of an illegal arrest and search and (2) that the Director of Corrections abused his discretion in rejecting him for treatment at the rehabilitation center.

Deputy Sheriff Hollis, on the afternoon of August 4, 1965, received a radio dispatch to investigate "suspicious persons and possible narcotic suspects" in a house at 132d and Mona. The officer had been to this residence two weeks before. It was then unoccupied with the windows boarded up. He drove to the vicinity of the house and parked. He noted that

the windows of the residence were still boarded up and that it was without furnishings. Wine bottles and paper were strewn about and there were 2-foot high weeds outside. Hollis heard voices inside the house. He walked toward the rear door and saw a man standing in the open doorway. Behind him, inside the house, he could see two more men. One of them, defendant, was squatting on the floor lighting a match. As Hollis stepped inside, defendant and one of the other men turned and ran. The officer caught and detained them before they could leave the house. He then observed that, on the floor in the center of the room near where he had first seen defendant, was a cigarette package with a small amount of a brownish sticky substance on top of it. A hypodermic needle was stuck into the brownish substance. An eye dropper, match covers and a bottle of water were also on the floor nearby. At this point, defendant and the other man the officer had detained were taken outside and searched. Defendant had seven balloons filled with heroin in his pocket. After finding the heroin, the officer arrested defendant and advised him of his constitutional rights. The next day, after again being advised of his rights, defendant confessed to another officer that the balloons of heroin belonged to him; he took about four grams of heroin a day and used the vacant house three or four times a week as a place to take it.

Defendant offered no defense.

Contrary to the assertion of defendant, the evidence establishes that the officer had probable cause to arrest him and, as an incident to his arrest, to conduct the search of his person which turned up the contraband. In the proper performance of his duties, the officer went to the vacant and boarded-up house to investigate the report that suspicious persons, possibly involved in narcotics activities, were on the premises. When he heard, then saw persons inside the house, he was entitled to investigate further by entering and questioning them as possible trespassers, who could be, as the report indicated, narcotics law violators. To this end, he had the right to stop and detain them when they attempted to flee. His observation of the narcotics paraphernalia, set up on the floor apparently prepared for use, and near the spot where he had observed defendant crouching with the lighted match, provided reasonable cause for defendant's arrest and search. Since he had probable cause for arrest, the fact the search preceded rather than followed the arrest is, under the circumstances, immaterial. (*People* v. *Ingle,* 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577].)

█ Defendant maintains he should not have been rejected for treatment at the California Rehabilitation Center. He was received there on December 17, 1965, after being committed by the court pursuant to Welfare and Institutions Code, section 3051.

In a letter to the court, dated March 4, 1966, Superintendent Wood, acting under the authority of the Director of Corrections, certified that defendant was not a fit subject for confinement or treatment at the rehabilitation center ''because of his extensive criminal history and his unwillingness or inability to profit from rehabilitative programs.''

Section 3053 of the Welfare and Institutions Code provides: ''If at any time after 60 days following receipt of a person at the facility, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted.''

Superintendent Wood's letter reviewed defendant's extensive criminal record, which includes burglary, assault and narcotics convictions, and makes the evaluation that defendant ''presents the primary problems of chronic criminality and nonamenability to change, which transcends his potential as a treatment candidate in the California Rehabilitation Center.'' Defendant was rejected on a specific ground set out in section 3053, namely ''excessive criminality.'' The record does not indicate it was an abuse of discretion to reject him on this ground.

Defendant points to language in section 3000 of the Welfare and Institutions Code which sets forth the general legislative intent behind the rehabilitation program. The section states in part: ''Persons committed to the program provided for in this chapter who are uncooperative with efforts to treat them or are otherwise unresponsive to treatment nevertheless should be kept in the program for purposes of control.'' The above quoted portion of section 3000 was alluded to by the rejected defendant in *People* v. *Hannagan*, 248 Cal.App.2d 107 [56 Cal.Rptr. 429], where, as here, it was asserted that the Legislature intended that unresponsive persons should not be rejected from the program. The court in *Hannagan* answered the contention, stating (at p. 114): ''This section [3000], however, does not contradict the provisions dealing

with grounds for rejection but, rather, expresses the intent that those who are merely uncooperative or unresponsive are not necessarily 'unfit.' There is an important difference between an uncooperative or unresponsive person and one who is excessively criminal, . . .''

As indicated above, defendant's rejection was based on his ''excessive criminality'' as shown by his criminal record.

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1968.