[Crim. No. 4857. Second Dist., Div. Two. Oct. 2, 1952.]

THE PEOPLE, Respondent, v. PATRICK E. IRVINE, Appellant.

A. H. McConnell for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of violating (1) subdivision 1, section 337a of the Penal Code,[1] (2) subdivision 2, section 337a, Penal Code, and (3) subdivision 3, section 337a, Penal Code, after trial before a jury, defendant appeals. There is also an appeal from the order denying his motion for a new trial.

*Facts:* On November 15, 1951, at about 11:30 a.m., Officer Calori saw an automobile which was registered to Mr. Lippe parked at the corner of Chestnut and Florista Streets in Los Alamitos. Across the street was a white house. The officer watched the car and house until 5:30 p.m., at which time a man came out of the house and drove to Seventh and Ximeno streets in Long Beach. On November 28, 1951, Mr. Lippe drove to the home of defendant at 3916 East Second Street and entered the house. He did the same thing on November 29.

---

[1]Section 337a of the Penal Code reads in part as follows:

"Every person,

"1. Who engages in pool-selling or book-making, with or without writing, at any time or place; or

"2. Who, whether for gain, hire, reward, or gratuitously, or otherwise, keeps or occupies, for any period of time whatsoever, any room, shed, tenement, tent, booth, building, float, vessel, place, stand or inclosure, of any kind, or any part thereof with a book or books, paper or papers, apparatus, device or paraphernalia, for the purpose of recording or registering any bet or bets, or any purported bet or bets, or wager or wagers, or any purported wager or wagers, or of selling pools, or purported pools, upon the result or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever; or

"3. Who, whether for gain, hire, reward, or gratuitously, or otherwise, receives, holds, or forwards, or purports or pretends to receive, hold, or forward, in any manner whatsoever, any money, thing or consideration of value, or the equivalent or memorandum thereof, staked, pledged, bet or wagered, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever; or . . ."

On December 1, 1951, Mr. Mason, a recording engineer, went to the premises at 3916 East Second Street, Long Beach, and during defendant's absence entered his house, installed a microphone and connected it with a recording machine and loud speaker in the garage of the house. Thereafter the recording engineer made various adjustments in the equipment and on several occasions the officers heard Mr. Lippe and defendant discussing horse racing, and receiving and placing bets over the telephone.

On January 3 and 4, 1952, a Mr. Curti entered defendant's home. On January 5th, police officers stopped Curti's car and while they were searching Mr. Curti, Officer Jacobson scattered crystalline powder, which was fluorescent under ultraviolet rays, over various papers in Mr. Curti's car. That same evening over the loud speaker Mr. Curti was heard in defendant's home telling defendant how he had been stopped by the officers. He also discussed the sheets of paper indicating that they were papers showing how much money was owed, due to bookmaking activities.

Shortly after Mr. Curti left the house Officers Jacobson and Kennedy entered defendant's home, put him under arrest and searched the premises. They found a number of sheets of paper of the same size, shape and texture as those found in Mr. Curti's car earlier that evening. These papers were put under an ultraviolet light and they showed a greenish purple color, the same color as the powder did which the officer had put on his hands prior to handling the papers in Mr. Curti's car.

The officers asked defendant to put his hands under the violet ray light to see whether they would flouresce the same as the papers in his home. Under the light his hands had the same color as the papers.

 Defendant does not question the sufficiency of the evidence to sustain the finding of guilty on each count, but claims that the court erred:

(1) In the reception of evidence, (a) obtained by the use of the microphone and recording machine which had been placed in defendant's home during his absence without a search warrant,[2] (b) that defendant's hands, when placed

---

[2]This evidence was properly received. Under a long line of decisions, the most recent of which is *People* v. *Kendall*, 111 Cal.App.2d 204 [244 P.2d 418] (hearing denied by the Supreme Court), wherein Mr. Justice Fox, speaking for this court, stated the rule at page 215 as follows:

"The fact that this evidence was illegally obtained does not, however, render it inadmissible in the state courts. (Citing cases.) The fact that

under an ultraviolet ray had the same greenish fluorescence as the powder which the officer had placed on the papers in Mr. Curti's car, because defendant was coerced into placing his hands under the ultraviolet ray.[3]

(2) In instructing the jury as follows:

"You are instructed that any trespass which you may find to have been committed upon the property of defendants, or any of them, is not to enter into your deliberations in weighing the guilt or innocence of these defendants or to be considered by you in any manner whatsoever. That is a matter in which defendants have a separate remedy at law but which has no part in this trial. It is your duty to consider only the evidence which has been admitted for your consideration and determine from such evidence whether the guilt of defendants, or any of them, has been proved, and render your verdict accordingly.

"You are instructed that you are to consider all evidence which the Court has permitted to be introduced for your consideration, irrespective of the manner by which such evidence has been obtained, and to give to all of such evidence the weight to which you shall find it to be entitled.

"The above instruction refers specifically to the testimony tending to prove that a microphone was placed in the home of defendant Patrick E. Irvine without the knowledge or consent of either the said Patrick E. Irvine or his wife, Mildred Irvine, and then connected by a wire to a distant point where it has been testified a recording machine and a loud speaker were installed and voices originating in the home of defendant Irvine were allegedly heard over the loud speaker and recorded on the recording machine. Such evidence (if

it was so obtained does not lay a foundation for attack upon the judgment in the United States Supreme Court because in *Wolf* v. *Colorado,* 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782], the court declined to interfere with the conviction of a defendant in a state court on an abortion charge where some of the evidence had been obtained in violation of the guaranty against unlawful search and seizure in article IV of the United States Constitution. The recent case of *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 154], does not detract from the holding in the Wolf case. The rationale of the Rochin case was placed squarely upon the ground that the evidence supporting defendant's conviction was secured by methods so brutally shocking as to offend the due process clause of the Fourteenth Amendment. Therefore the search warrant in this case was wholly immaterial.''

[3]This contention is devoid of merit for the reason that the record shows that defendant voluntarily placed his hands under the ultraviolet ray light and did not do so under any compulsion of the police officers.

you find that it was so obtained) is legally admissible in this State the same as any other competent evidence."[4]

Article VI, section 4½ of the Constitution of the State of California reads in part as follows: "No judgment shall be set aside, or new trial granted, *in any case,* on the ground of *misdirection of the jury,* or of the *improper admission* . . . of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. . . ." (Italics added.)

We have examined the record and are of the opinion the evidence fully sustains the verdict of guilty on each count and there has not been a miscarriage of justice in the present case. Hence, since it needs no citation of authorities to support the thesis that this court is bound by the mandate of the Constitution of the State of California, it follows the judgment and order must be affirmed.

It is likewise apparent no useful purpose would be served by an extended discussion of the errors alleged by defendant, which would only be, as indicated in the cases cited in the footnotes, a repetition of principles of law well established in this state and repeatedly reiterated in opinions of the appellate courts. We therefore refrain from further discussion of the alleged errors. (*Cf. Thatch* v. *Livingston,* 13 Cal. App.2d 202, 203 [56 P.2d 549].)

The judgment and order are and each is affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied October 15, 1952, and appellant's petition for a hearing by the Supreme Court was denied October 30, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.

---

[4]The questioned instruction was properly given by the trial court since it is the judge's duty to see that the jury are adequately informed on the law governing all elements of offenses submitted to them to an extent necessary to enable them to perform their function in conformity with the applicable law. (*People* v. *Sanchez,* 35 Cal.2d 522, 528 [3] [219 P.2d 9].) As pointed out in footnote 2, the trial court properly admitted the questioned evidence, hence the instruction pertaining thereto was properly given by the court. (*Cf. People* v. *Sica,* 112 Cal.App.2d 574, 586 [19] [247 P.2d 72].)