[Crim. No. 5657. Second Dist., Div. Two. Oct. 19, 1956.]

THE PEOPLE, Respondent, v. WILLIAM FRED ANDERSON, Appellant.

Albert Jack Chotiner and Russell E. Parsons for Appellant.

Edmund G. Brown, Attorney General, and Robert S. Rose, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was convicted of violating subdivision 2 of section 337a, Penal Code, in that he kept and occupied a residence at 715 E. Arbor Vitae, Inglewood, for the purpose of recording bets on horse races; he was convicted also on a second count of bookmaking in violation of subdivision 4 of the section. He appeals from the judgment[1] of conviction and the order denying his motion for a new trial.

On October 18, 1955, at approximately 4:30 in the afternoon, Deputy Sheriff Allen took up surveillance of the dwelling in question. Soon after 5 o'clock defendant emerged and left in his car. About 9 o'clock that evening Officer Allen returned to the location. He found no lights on in the house and no other signs of activity. Allen resumed his surveillance shortly before 7 o'clock the next morning. Defendant arrived a little after 8 o'clock, entered the house, locked the screen and closed the front door.

During the morning of October 19th, Lieutenant Martin requested the telephone company to furnish him the listing of the telephone number ORchard 2-6263. He was advised that this number was listed at 715 Arbor Vitae, Inglewood. Sometime between 1:30 and 1:45 that afternoon Sgt. Johnson, with Officers Gentzvein, Wallace, Seltzer and Fowler, arrived in the vicinity of the above address. Officer Gentzvein

---

[1]Although defendant was granted probation, such an order is deemed a final judgment for purposes of appeal. (Pen. Code, § 1237.)

had previously ascertained from a newspaper or scratch sheet that a particular horse was scheduled to run at a particular race track on that date. Gentzvein entered a public telephone booth, located at a gasoline station on the corner of Prairie and Arbor Vitae, and dialed ORchard 2-6263. Someone answered, "Hello." The officer then said, "This is Bill for 5 in the 5th at B.M., Third Dawn, 5 to win, 5 to show." The voice replied "OK." At the time Gentzvein entered the booth Sgt. Johnson was some 20 feet to the rear of the Arbor Vitae house in an alley that runs on the east side of the property. After completing this call, Gentzvein signalled Officers Wallace and Seltzer. The officers then proceeded to the house.

Johnson and Wallace used a hearing-aid type of listening device at a rear window which was boarded up with plywood that had a series of quarter-inch holes from which artificial light appeared. Johnson overheard a voice from within say, "Hello, at Bay Meadows" and "I got you." Johnson thereupon stated, "This is the vice detail" and demanded that the door be opened. He announced, "This is the Sheriff's Department. You are under arrest for bookmaking." Upon receiving no reply, he repeated, substantially, his announcement and demand. The officers then heard a scuffling noise right next to the window and smelled what appeared to be something burning. Johnson ordered Gentzvein and Wallace to enter through the door. Being unable to make such an entrance, Johnson ordered them to "try the wall just adjacent to the door." They effected entrance in this fashion. They then assisted Johnson through the window, which he had broken after removing the plywood. He entered a small bedroom in the rear of the house. The room was furnished with two desks, two telephones, a radio, a metal barbecue-type brazier, and a stand with pencils, papers, and pads. The brazier was burning profusely and the smoke in the room was dense. Defendant, who was in this room, was arrested. Several small cards with penciled notations thereon were seized. These were betting markers. There was also a racing form of that date in the room. While the officers were there, the telephone rang several times. The callers were attempting to place bets on the races.

Defendant told Johnson and Wallace that he had been at that place approximately two weeks; that he was paid "$100.00 per week to handle action coming over the phone"; that he took in about $1,000 a day; and that he did not live there. Defendant refused to divulge the name of his employer.

The officers did not have a warrant for defendant's arrest; nor did they have a search warrant.

Defendant's principal contention is that the arresting officers forcibly entered the house in question without reasonable or probable cause; that they thereby invaded his constitutional rights against unreasonable search and seizure; and that the evidence thus obtained was not admissible under the decision in the Cahan case (44 Cal.2d 434 [282 P.2d 905].) He argues, "There is no showing whatsoever that they [the officers] had any information that any public offense was being committed at that establishment." The record does not support factually defendant's argument. We need only refer to the telephone call that Gentzvein placed and to what Johnson overheard by the use of his listening device outside the rear window. But, argues defendant, "the evidence shows, without question of a doubt, that Johnson was actually pulling off the plywood, was actually making a forcible entry of this establishment, before he even received the signal from the officer [Gentzvein] who placed the telephone call." The record does not warrant defendant's position. The inference is quite to the contrary. After Gentzvein concluded his telephone call he signaled Wallace and Seltzer. Wallace was with Johnson at the rear window that was covered with the plywood when they employed the listening device. It is a reasonable inference that Wallace informed Johnson, who was his superior and apparently in charge of this operation, that he had received the signal from Gentzvein. Furthermore, it was Gentzvein and Wallace who, on orders of Johnson, first effected entrance into the house. Wallace then helped Johnson enter through the rear window.

With the information revealed by Gentzvein's telephone call and Johnson's listening device the officers had sufficient grounds for suspecting, and even for believing, that the house occupied by defendant was being maintained as a bookmaking establishment. (See *People* v. *Moore*, 140 Cal.App.2d 870 [295 P.2d 969], for a definition of "reasonable or probable cause.") In *People* v. *Miller*, 143 Cal.App.2d 558 [299 P.2d 1010], substantially this identical technique of investigation was employed and by three of the same officers. Upon receiving no response, in the Miller case, to their demand for admission to the apartment the officers kicked in the door and entered. Presiding Justice Shinn there stated (p. 561) that "under the authorities, which is unnecessary to review, the forcible entry of the premises after demand for admittance and refusal

was not unlawful.'' The court held that it was not error to admit the evidence of bookmaking activities. So, in the case at bar, the forcible entry of the house was not unlawful, the search and seizure that followed did not violate defendant's constitutional rights, and the evidence thus procured was admissible.

In the caption of his second point, defendant enumerates a number of his constitutional rights that he asserts were violated by the use of the listening device on the outside of the rear window. However, his constitutional guarantee against unreasonable search is the only one that he supports with any argument. He claims that this right was violated by the use of the sound amplifier and that his portion of the telephone conversation thus overheard should have been excluded from evidence under the Cahan case. His position is not well taken in view of the decisions in *Goldman* v. *United States,* 316 U.S. 129 [62 S.Ct. 993, 86 L.Ed. 1322], and *People* v. *Graff,* 144 Cal.App.2d 199 [300 P.2d 837] (hear. den.). In these cases a sound amplifier was placed against the outer wall of defendant's room by which incriminating conversation between the occupants was overheard as well as, in one instance, defendant's part of a telephone conversation, as in the instant case. It was held in both of these cases that the defendant's constitutional right against unreasonable search had not been violated and that the evidence thus acquired was admissible. Under these authorities, defendant's part of the telephone conversation that was overheard by means of the sound amplifier was properly received in evidence.

Defendant's third point is that the telephone conversation of Officer Gentzvein to the house under surveillance was hearsay and therefore inadmissible in evidence. Defendant misconceives the purpose of this evidence. It was admissible as a circumstance going to show that the officers had reasonable cause to believe that bookmaking was being carried on in the house and that they therefore had a reasonable basis for their subsequent acts. (*People* v. *King,* 140 Cal.App.2d 1, 9 [294 P.2d 972].) There is no suggestion that the other evidence is not sufficient to support the conviction.

The judgment and order are affirmed.

Moore, P. J., and Ashburn, J., concurred.