[Crim. No. 3960. First Dist., Div. Two. Nov. 15, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JESSIE D. RUCKER, Defendant and Appellant.

Joseph A. Giordano, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—Defendant appeals from a judgment rendered on a jury verdict finding him guilty of possession of heroin in violation of section 11500 of the Health and Safety Code. On this appeal from the judgment of conviction, he argues that there was no reasonable probable cause for arrest; that certain evidence was obtained by an unlawful search and seizure, and that the ruling on his motion to exclude the unlawfully obtained evidence was based on a hearing which did not meet the due process requirements of the state and federal Constitutions.

The appellant, Jessie D. Rucker, and his codefendant, Rose McShane, were charged by information with one count of

possessing heroin in violation of section 11500 of the Health and Safety Code. The information also charged the appellant with seven prior convictions including three narcotic offenses. The appellant denied four of the prior convictions but admitted three prior convictions, two of which were narcotic offenses.

The facts are as follows: On the evening of December 10, 1960, Officers Marshall and Weiss of the Narcotics Detail of the San Francisco Police Department, were on their routine patrol in the Fillmore area, and saw Mrs. McShane in the bar of the Booker T. Washington Hotel around midnight. About an hour or so later when they entered the Uptown Hotel at 1739 O'Farrell Street to conduct their regular nightly routine check of hall lights and fire escapes, they heard a woman's voice say: "There are too many cops in the Fillmore area" as they walked down the hallway past room 40. They stopped outside the door and the same voice said: "They are using my room for a shooting gallery." The female voice asked: "Is it deep enough now?" and a male voice answered: "I don't know where it is." The female voice answered again, saying: "Tip the needle a little higher. It will go deeper." The officers recognized the voice as that of Mrs. McShane, who was known to them as an addict and prostitute. They also knew that she lived in room 40 of the Uptown Hotel, although they had not checked the hotel register on that particular evening.

There is a dispute in the testimony as to what then occurred. The officers testified that they knocked and announced themselves as police officers. This resulted in some scuffling and scurrying in the room, after which the officers attempted to force the door by hitting it with their shoulders. However, the door was immediately opened from the inside by the appellant who stood there with the door knob in his hand.

The premises entered consisted of two rooms approximately 10 by 10 with an archway in between. As the officers entered, they saw Mrs. McShane standing about 6 feet from the door with one sleeve of her sweater rolled up, exposing a bleeding puncture wound in her arm. The appellant, whom they also knew, stood near the door, still wearing his overcoat but not his hat. On the dressing table a few feet away from Mrs. McShane, the officers found a spoon containing the residue of a moist white powder which was subsequently determined to be heroin. A finger stall, a rubber band, portions of a toy balloon, a pocket knife, an eye dropper and the holder of a

hypodermic needle were also on the dresser. The hypodermic needle with fresh blood on it was on the floor near Mrs. Mc-Shane's foot. The officers also noted that the pupils of the appellant's eyes, as well as Mrs. McShane, appeared pinpointed and their speech was unusually slow, both characteristics of persons under the influence of narcotics. They also noted some puncture wounds on the appellant's arms. The officers concluded that the appellant and Mrs. McShane were under the influence of narcotics and arrested them. The appellant had several small puncture wounds in his arm.

Mrs. McShane testified that before meeting the appellant, she had been in the bar of the Booker T. Washington Hotel. She left there about midnight and met the appellant near the intersection of Ellis and Fillmore. He said to her: ''I have got it good'' which she knew meant he was going through withdrawal symptoms and that he needed a ''fix.'' They then proceeded to her room in the Uptown Hotel and he removed a blue balloon of heroin from his mouth and proceeded to prepare it with the paraphernalia which he brought along and administered the ''fix'' to her. About five minutes elapsed between their arrival in the hotel room and the entry of the police officers. She stated although she had been addicted to narcotics for several years, she had never administered an injection to herself and could not do so; that she had not touched the narcotics before they were administered to her; that all the paraphernalia belonged to the appellant, and that nothing had been said about money.

The appellant took the stand and testified that he had known Mrs. McShane for many years and had never before accepted her invitations to come to her room. He denied making the above-mentioned statement and stated he went to her room with her solely for the purpose of feminine companionship. He denied ownership of the paraphernalia or knowledge of the narcotics and also denied giving her an injection and stated he had not even seen the spoon on the dresser until the police picked it up. He further testified that he did not see Mrs. McShane use any narcotics but that the things were there in her room at the time they arrived, and that about five minutes elapsed between their arrival and the arrival of the officers.

The first argument on appeal is that there was no reasonable probable cause for the arrest because the information leading to the arrest was obtained by unreasonable eavesdropping. Appellant argues that since the door to Mrs. Mc-

Shane's room was a wooden one without a transom, the stopping by the officers was unreasonable eavesdropping. Appellant, however, admits that this argument is contrary to the holding of *People* v. *Graff,* 144 Cal.App.2d 199 [300 P.2d 837], which establishes the rule that in this state, eavesdropping in the absence of trespass is not a search or seizure in violation of the state Constitution. As we pointed out in *People* v. *Graff, supra,* the matter of evidence obtained by eavesdropping was better fitted for legislative regulation than judicial determination. Here, as the uncontroverted evidence established, the officers were on the premises in the course of their regular duty and with the permission of the manager and there was no trespass. We see no reason to deviate from the rule of the above cases. We hold, therefore, that the admission of the statement overheard by the officers was not error.

The next question is, were the spoon and other paraphernalia legally seized and were these items properly admitted in evidence? The answer to these questions depends on whether the statements overheard by the officers constituted reasonable cause for the arrest of the appellant and Mrs. McShane. As the arrest was admittedly made without a warrant, the burden rests on the prosecution to show proper justification (*Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23]). A peace officer may, without a warrant, arrest a person when a felony has been committed and the officer has reasonable cause for believing the person arrested to have committed it (Pen. Code, § 836). As we have so often pointed out, there is no exact formula for the determination of reasonableness; each case must be decided on its own facts and circumstances. The legality of the search depends on whether the arresting officers, before the search, had reasonable cause for believing that the appellant and his companion had committed a felony or any crime in their presence, without considering what the arrest and search thereafter turned up (*People* v. *Brown,* 45 Cal.2d 640, 642 [290 P.2d 528]).

The officers knew the appellant and also that Mrs. McShane lived in room 40 of the Uptown Hotel and recognized her voice. The question is, whether upon overhearing the portion of the conversation relating to "shooting" [a term used to denote the intravenous taking of narcotics] and the penetration of the needle, the officers had reasonable cause to believe and entertain a strong suspicion that a violation of the narcotics laws was taking place within their earshot

in room 40. The officers did not have to close their ears to what they heard simply because it was disconnected with their original purpose of checking the lights and fire escapes (*cf. People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]). Unlike the situation in *People* v. *Privett,* 55 Cal.2d 698 [12 Cal.Rptr. 874, 361 P.2d 602], and *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10], the conversation was not an entirely innocent one. Under the facts here presented, we can only conclude that the officers had reasonable and probable cause for the arrest (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]).

Appellant, citing *Mapp* v. *Ohio* (1961) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081], however, next argues that since the entry into the hotel room was by the use of unlawful force, the evidence must be excluded as the product of an unlawful search. However, as we recently indicated in *People* v. *Tyler,* 193 Cal.App.2d 728, 734 [14 Cal.Rptr. 610], we found nothing in the *Mapp* case to indicate that as a result of that decision, the states are bound to follow the federal requirements of reasonable and probable cause instead of their own. Here, we have concluded that the officers had reasonable and probable cause.

 The resolution of the conflict in the evidence as to the manner of entry was for the trial court. Even accepting appellant's version of the entry, however, given reasonable probable cause, the only question is whether it was within the scope of section 844 of the Penal Code which provides: ''To make an arrest . . . a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.''

 Under this section, it has been held that when the officers knock and announce themselves as police, the demand requirement of the statute has been substantially satisfied (*People* v. *Miller,* 193 Cal.App.2d 838, 841 [14 Cal.Rptr. 704]; *People* v. *Carswell,* 51 Cal.2d 602 [335 P.2d 99]). In the instant case, the trial court had discretion to disbelieve appellant's version of the facts of the entry, and conclude that the appellant had consented to the entry (*People* v. *McCoy,* 195 Cal.App.2d 655 [16 Cal.Rptr. 117]). Even if the court believed the appellant, it could have concluded that under the circumstances, compliance with section 844

was not required (*People* v. *Maddox*, 46 Cal.2d 301, 306-307 [294 P.2d 6]; *People* v. *Shelton*, 151 Cal.App.2d 587 [311 P.2d 859]; *People* v. *Hammond*, 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289]; *cf. People* v. *Johnson*, 195 Cal.App.2d 573 [16 Cal.Rptr. 1]).

▪ Appellant further argues, however, that there was an abuse of discretion because upon being presented with conflicting evidence on the crucial matter of the manner of entry, the trial court did not give his motion to exclude the evidence a procedurally adequate hearing which complied with the due process requirements of the state and federal Constitutions. We have already pointed out that this conflict in the evidence becomes a crucial one only in the absence of reasonable, probable cause. The record before us indicates that appellant's counsel requested and was granted permission to examine Officer Marshall on *voir dire*. When the examination of the witness revealed the circumstances of the officers' entry into the hotel room, appellant's counsel moved to exclude the evidence. However, he made no offer to present contradictory evidence, etc. Thus, it appears that appellant is precluded from raising the matter for the first time on appeal (*People* v. *Richardson*, 51 Cal.2d 445, 447 [334 P.2d 573]). However, since the argument here raised is a novel one, we deem it our duty to discuss it briefly. Appellant here erroneously argues that the trial court should have advised his counsel that it proposed to rule on the matter and offer to hear conflicting testimony. Appellant's counsel knew that the matter here related to the admissibility of certain evidence. Furthermore, as the issues relating to probable cause for arrest and legality of search are mere foundations for the admissibility of evidence and wholly collateral to the issue of guilt or innocence, the better practice is to settle these complex matters of admissibility before trial by a motion under section 995 of the Penal Code or writ of prohibition.

No prejudicial error appearing in the record before us, the judgment must be affirmed.

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 9, 1962.