[Crim. No. 9017.   Second Dist., Div. Two.   Oct. 16, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY JEFFERSON, JR., Defendant and Appellant.

H. Randolph Moore, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

KINCAID, J. pro tem.*—The appeal herein is taken from a judgment of conviction of violating Health and Safety Code section 11530, possession of marijuana, and of having suffered a prior felony conviction for violation of Health and Safety Code section 11500. Probation was denied and appellant was sentenced to the state prison, his sentence to run concurrently with that under the previous conviction. Dorothy Jean McGuire was likewise convicted of violating section 11530 and has not appealed.

### Statement of the Facts

On November 23, 1962, at about 11 a. m., two Los Angeles police officers went to premises at 211 East 55th Street, Los Angeles. They conversed with the landlady in room number 4, and as they left that room they passed the adjoining room, number 5. They heard voices in the latter room and listened at the door. Officer Batterson leaned his head against the door and listened for several minutes. While listening he overheard two male voices. The first male voice he heard stated, "Give me a joint, man. I need to be turned on bad." The second male voice, which the officer later identified as that of appellant Jefferson, stated, "I only have this one and the one I am smoking. I haven't made any others."

The first voice then stated, "You got her to fly with. I need something bad. Come on, give me the joint." At that time the second male voice then stated, "I have only got this one, and it cost me two bits." The first voice said, "Well, I will pay you a dollar for it," or conversation similar to that.

At that time Officer Batterson knocked on the door. The second voice, which he later identified as that of appellant Jefferson, asked who it was.

Officer Batterson stated, "Police officers." He then heard scuffling noises inside the room, and he heard a female voice state, "Get rid of the stuff." This voice was later determined by him to be that of defendant McGuire.

Appellant Jefferson then asked, "Who did you say it was?" Officer Batterson stated, "Police officers. Open the door."

At that time he heard the sound of running feet and what he thought was the opening of a window. He then forced entry into the room.

After he forced the door, he observed Young immediately

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

to the left of the door. Appellant Jefferson was next to an open window. Defendant McGuire was in bed.

The officer had the two men place their hands upon the wall and he searched them for weapons. He then handcuffed the men.

As the two men turned around, Officer Batterson asked them their names and where they lived.

When appellant Jefferson answered the questions, the officer noticed a brown paper cigarette in his mouth and a brown leafy substance adhering to his lips. The officer believed it was a narcotic. He told appellant not to swallow the object in his mouth.

The officer then used his right hand to reach in and extract the object. He used his left hand at the back of appellant's jaw so that if appellant attempted to bite, he could hold appellant's mouth open to protect his fingers.

The officer then searched the room. In an ashtray in front of the bed was a paper bag filled with marijuana. He saw defendant McGuire place the bag in the ashtray. She was placed under arrest.

Near the wall, next to the open window, about 3 or 4 inches from where appellant had been standing when the officer entered the room, he found a complete brown-paper-wrapped marijuana cigarette.

On November 26, 1962, at the jail appellant had a conversation with Officer Guinn. All of appellant's statements were made freely and voluntarily. They talked of another matter for a while. Then appellant asked Officer Guinn what the officers were doing outside his door. Officer Guinn told appellant that, as he understood it, the landlady had pointed to the wrong door, and this was the reason the officers were there.

Appellant then said that that wasn't his house, that he didn't live there, so he wasn't responsible for the narcotics in the house.

Officer Guinn said, ''Well, that may be true, but you will have a hard time explaining what was in your mouth.'' Appellant said, ''Yes, I guess I am dead on that.''

Officer Guinn then asked him, ''Who brought the marijuana into the house?'' Appellant said, ''Well, I wasn't there.'' He wasn't there before Mr. Young came to the house.

Officer Guinn asked appellant how many cigarettes they had smoked that morning, and he said they were finishing their second one when the officers came in.

This conversation was received with respect to appellant only. No objection was made thereto.

The officer did not have any arrest or search warrant.

The court did not admit into evidence that portion of the marijuana cigarette which came from appellant's mouth. However, the court did admit into evidence the portion which the officer saw protruding from appellant's mouth, being part of a brown paper, and what appeared to be marijuana on his lips. The court also admitted the marijuana cigarette found on the floor and the bag of marijuana found in the ashtray.

Defendant McGuire testified for the defense. She denied knowledge that there was any marijuana on the premises. She denied hearing any talk about a "joint" or somebody "getting turned on," or anything like that. She denied placing the bag of marijuana in the ashtray. She denied hearing someone knock on the door and yell, "Police officers. Open the door." She said it was her room.

Appellant did not testify. His unlawful possession of the contraband was not denied at the trial nor is it contested on this appeal.

Appellant now contends that his judgment of conviction should be reversed because (1) the police officers had no reasonable or probable cause to be on the premises and listening outside the apartment door where defendant was arrested; (2) the conduct of the officers was a search in violation of appellant's right to privacy under the Fourth Amendment of the United States Constitution; (3) even if there was probable cause, the marijuana obtained by choking appellant led to a further search of the premises, and any other contraband found is inadmissible as fruits of an initially illegal search. We find no merit to any of appellant's contentions.

In contending that the police officers had no reasonable or probable cause to be on the premises and listening outside the apartment door where he was arrested, appellant primarily relies upon the cases of *Bielicki* v. *Superior Court*, 57 Cal.2d 602 [27 Cal.Rptr. 552, 371 P.2d 288]; *Britt* v. *Superior Court*, 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817]; and *People* v. *Regalado*, 224 Cal.App.2d 586 [36 Cal. Rptr. 795]. Each of these cases deals with observation by police officers through a pipe or peephole. In each of these cases the court held that under the circumstances there shown the evidence so obtained may not be utilized to prove the commission of unlawful acts and that spying through holes bored or other openings made for that purpose into private places is

illegal and the illegally obtained information is inadmissible as evidence.

In the instant case, however, the preliminary evidence so obtained by the police officers consisted of listening to sounds emanating through a closed doorway of a room rather than looking through an aperture specially made for that purpose. The evidence herein discloses the officers to have properly proceeded into the building and that they were in the hallway thereof with the permission of the landlady. No indiscriminate course of conduct by the police is indicated whereby they arbitrarily went up and down hallways listening at doors at random.

The cases of *People* v. *Rucker,* 197 Cal.App.2d 18 [17 Cal. Rptr. 98], and *People* v. *Graff,* 144 Cal.App.2d 199 [300 P.2d 837], are somewhat similar to our instant case. In *Rucker,* police officers were making a routine patrol through the halls of a hotel when they heard a conversation through a closed door to one of the rooms. They recognized the conversation as relating to narcotics and further recognized one of the voices as that of a known addict. In reply to the objection that under the facts shown there was no probable cause for arrest and that the evidence subsequently obtained was by unlawful search and seizure, the court said (p. 22) : ''Appellant, however, admits that this argument is contrary to the holding in *People* v. *Graff,* 144 Cal.App.2d 199 [300 P.2d 837], which establishes the rule that in this state, eavesdropping in the absence of trespass is not a search or seizure in violation of the state Constitution. As we pointed out in *People* v. *Graff, supra,* the matter of evidence obtained by eavesdropping was better fitted for legislative regulation than judicial determination. Here, as the uncontroverted evidence established, the officers were on the premises in the course of their regular duty and with the permission of the manager and there was no trespass. We see no reason to deviate from the rule of the above cases. We hold, therefore, that the admission of the statement overheard by the officers was not error.''

In *People* v. *Graff, supra,* the conviction was affirmed even though the incriminating evidence was obtained through the use of an electronic listening device attached to the wall of an adjoining apartment. The court followed the federal rule that where evidence is obtained through the sense of hearing, there is no entry into the place occupied by the defendant. A similar holding is found in *People* v. *Anderson,* 145 Cal.App.

2d 201 [302 P.2d 358], where bookmaking evidence was obtained by means of a hearing-aid type of listening device placed against a window.

A somewhat analogous situation to listening to sounds emanating through an enclosure is where police smell something incriminating coming out of a closed room. In *People* v. *Bock Leung Chew,* 142 Cal.App.2d 400 [298 P.2d 118], police officers, while proceeding to a particular apartment in a building, passed another apartment door. As they did so they smelled the odor of opium. It was there held that under these circumstances the officers were justified in making an immediate entrance into and search of the apartment without first procuring a warrant.

Our United States Supreme Court in the cases of *Irvine* v. *California,* 347 U.S. 128, 131 [74 S.Ct. 381, 98 L.Ed. 561], and *Goldman* v. *United States,* 316 U.S. 129 [62 S.Ct. 993, 86 L.Ed. 1322], dealt with the question of evidence obtained by placing electronic devices consisting of a microphone and a detectaphone against a wall and listening to conversations emanating from the opposite side. Evidence so obtained was found to be admissible and not in violation of any constitutional right or privilege of the defendant.

In *Silverman* v. *United States,* 365 U.S. 505 [81 S.Ct. 679, 5 L.Ed.2d 734], the United States Supreme Court held that a "spike mike" which penetrated through the party wall of a building and connected with the heating ducts inside was illegal because it was "an unauthorized physical penetration into the premises occupied by the petitioners." However, the court specifically refused to reconsider its prior decisions holding that the use of electronic devices, magnifying internal sounds, attached to outside walls, were proper methods of obtaining evidence.

The arresting officers being lawfully on the premises in the course of their regular duty and having heard the foregoing conversation emanating from the closed room, would have been derelict in their duty had they disregarded what they heard and left the premises. Instead they properly proceeded to conduct a further investigation. Following a knock on the door and in response to a question from within as to who was there, the reply was "Police officers." A female voice within was heard to say, "Get rid of the stuff." Again came the inquiry as to who was there and the response, "Police officers. Open the door." At that time the sound of running feet was heard and what seemed to be the opening of a window. Under these circumstances the officers had reasonable and probable

cause to enter the premises and arrest the occupants without any warrant. (Pen. Code, § 836; *People* v. *Ingle,* 53 Cal.2d 407, 412, 413 [2 Cal.Rptr. 14, 348 P.2d 577].)

Since the officers had good and reasonable grounds to believe that defendant had committed a felony, they accordingly had a right to search the entire premises then under the control of the defendant. (*People* v. *Guerrera,* 149 Cal.App.2d 133, 136 [307 P.2d 940].) Since the officers' right to invade defendant's privacy clearly appears, they were privileged to break open the door of the room occupied by the defendant and for the purpose of arresting him. Under the circumstances here shown to have delayed such entry might very well have provided the defendant with sufficient time within which to have destroyed the evidence. (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]; Pen. Code, § 844.)

The evidence fails to support the contention of appellant that any contraband admitted into evidence was obtained by excessive or any use of force. The police officer testified there was no choking involved herein. This statement was not contradicted by defendant McGuire and appellant did not testify. Even if we assume that excessive force was used to remove the cigarette from appellant's mouth, that material which was removed was excluded from evidence by the trial court. Under the circumstances here existing the traces of brown paper and marijuana which were on appellant's lips in open view as well as the paper bag filled with marijuana and the paper-wrapped cigarette found on the floor were properly admissible. Merely because one piece of cumulative evidence may be illegally obtained is no reason to exclude other evidence seized in a proper manner. (*People* v. *Parham,* 60 Cal.2d 378, 385-386 [33 Cal.Rptr. 497, 384 P.2d 1001]; *People* v. *Martin,* 45 Cal.2d 755, 763 [290 P.2d 855].)

Affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied November 4, 1964, and appellant's petition for a hearing by the Supreme Court was denied December 9, 1964. Mosk, J., did not participate therein.