[Crim. No. 10403.    Second Dist., Div. Four.    Apr. 20, 1966.]

THE   PEOPLE,   Plaintiff   and   Respondent,   v.   JOHN HUGHES, Defendant and Appellant.

Saul J. Bernard for Defendant and Appellant.

Frank C. Wood, Jr., as Amicus Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Rose-Marie Gruenwald and Robert H. Francis, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—By an amended information, defendant was charged in three counts with bookmaking in violation of section 337a of the Penal Code, subdivisions 1, 2 and 6 respectively. Five prior felony convictions were also alleged. A jury trial was waived and the case was submitted on the transcript of the preliminary hearing. The court found defendant guilty as charged. No finding was made on the priors. Motions for new trial and probation were denied and defendant was sentenced on each count to serve one year in the county jail. The sentences were ordered to run concurrently. Defendant appeals from the judgment of conviction.

The facts are as follows: Defendant was arrested on January 25, 1964, in apartment No. 6, 2314 South Raymond Avenue, Los Angeles. On this date Officer Harold Hand of the Los Angeles Police Department arrived in the vicinity of apartment No. 6 and kept it under surveillance for approximately 40 minutes. During this time the officer saw 14 different persons enter and leave the apartment. Three of these persons were carrying papers which he recognized as National Daily Reporters. After making these observations, Officer Hand proceeded to apartment 3 which was located directly below apartment 6. He received the permission of the woman living in the apartment to set up a listening device to attempt to overhear conversations in apartment 6 above. Officer Hand stood on a chair and placed a listening device known as a "Fargo amplifier" against the ceiling. No perforation or penetration of any kind was made in the ceiling. The officer listened to several conversations taking place in apartment 6. He heard sums of money mentioned and the names of horses running at Santa Anita. Officer Hand also heard a voice, which he recognized as that of defendant, say "Okay, Fields. That was Kojo in the fourth race. He's number 2. Two dollars to win." He also heard defendant say, "That was Delhi Maid in the sixth race, one dollar to win. Okay, Art, I got you down." The officer checked a National Daily Reporter which he had in his possession and discovered that there was a horse by the name of

Kojo running in the fourth race at Santa Anita, and a horse named Delhi Maid running in the fifth race. The officer, an expert in the field of bookmaking, was of the opinion that a person upstairs by the name of Fields had made a wager with defendant of two dollars to win on a horse in the fourth race; that defendant accepted the wager.

After listening to these conversations, Officer Hand informed his fellow police officers by "walkie-talkie" of what had transpired and asked them to meet him upstairs in front of apartment 6. Upon meeting the officers, Officer Hand knocked on the door which was opened by defendant. The officer told defendant, "You're under arrest. You're going to jail, John."

After defendant was placed under arrest Officer Hand and the other officers conducted a search of the apartment. Ten men and women were seated in the apartment. The search turned up numerous booking paraphernalia which was later introduced into evidence at the trial over defendant's objection that it was acquired as the result of an illegal search.

Officer Hand indicated on cross-examination that he had met defendant approximately four weeks prior to the arrest in a parking lot directly to the rear of apartment 6. The officer had received a complaint that bookmaking was taking place in the apartment. Between this first meeting and the time of the arrest the officer had talked to defendant on at least five other occasions. Defendant had invited the officer to his apartment on each occasion. There were always other people in the apartment at the time of the visits. Between visits the apartment was kept under observation by the officer at various times. The officers had no warrant authorizing arrest or search.

The principal contention urged by defendant is that the use of the listening device by the officers violated his rights under the Fourth Amendment of the United States Constitution and article I, section 19 of the California Constitution; that, without the evidence secured as the result of its use, the search and seizure were illegal because no reasonable cause for arrest existed.

Defendant recognizes that the present law in this state is contrary to his position that the use of the listening device was improper. In *People* v. *Graff,* 144 Cal.App.2d 199 [300 P.2d 837], a case quite similar to the instant one, the court, following *Goldman* v. *United States* (1942) 316 U.S. 129 [62 S.Ct. 993, 86 L.Ed. 1322], held that it was not error for the court to admit evidence secured by means of a sound amplifying device

placed against a party wall between one apartment occupied by the police and an apartment occupied by defendant. (See also *People* v. *Anderson*, 145 Cal.App.2d 201 [302 P.2d 358]; *People* v. *Rucker*, 197 Cal.App.2d 18, 21-22 [17 Cal.Rptr. 98]; *People* v. *Jefferson*, 230 Cal.App.2d 151, 154-156 [40 Cal.Rptr. 715], where the same rule is stated.) The United States Supreme Court in *Goldman, supra*, determined that the use of listening devices by law enforcement officers, in the absence of a trespass, did not constitute a violation of the Fourth Amendment.

We are asked to reconsider this rule in the light of *Silverman* v. *United States* (1961) 365 U.S. 505 [81 S.Ct. 679, 5 L.Ed.2d 734]. But in *Silverman* the court held that the Fourth Amendment was violated where officers made use of a 'spike mike'' which was inserted through a party wall. This, it was decided, constituted a physical penetration into the premises occupied by the defendant. The court expressly refused to reconsider its previous decision in *Goldman, supra*, on the ground that it was unnecessary under the facts of the case. In the instant case the device used, known as a ''Fargo amplifier'', required no penetration into the party wall. Consequently, the *Goldman* and *Graff* decisions and the several cases citing them, are controlling on the issue.

The question remains whether the arrest and search were lawful. An officer may make an arrest where he has reasonable cause to believe that the person arrested has committed a felony. (Pen. Code, § 836.) The evidence demonstrates that, on the basis of the information in the hands of the officer, his observations of the numerous persons seen entering and leaving the apartment, and from what he overheard with his listening device (which we have concluded was not illegal), there was reasonable cause to arrest defendant for the felony offense of violation of Penal Code section 337a. (See *People* v. *Graff, supra*, 144 Cal.App.2d 199.) The search was a reasonable incident to the arrest and therefore was proper.

When the officers entered the apartment and arrested defendant they informed him they had a complaint that he was conducting bookmaking at the apartment. At this time defendant said ''I don't know who would complain. I always pay my players.'' Officer Hand then asked him if he would stop ''making book'' at this location. Defendant stated that he would ''move shortly'' to another location. As his second contention, defendant maintains that these statements were

obtained without warning him of his constitutional rights in violation of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. One of the elements which must be present in order for the rule stated in *Dorado* to be applicable, is that the police have undertaken a process of interrogation which tends to elicit incriminating statements. We do not regard defendant's statements to be the product of such an interrogation. Defendant's initial statement ''I don't know who would complain. I always pay my players,'' was volunteered by defendant when the officers informed him of the reason for their visit. It was not made in response to any question asked by the officers. The second statement (that he would move shortly to another location), although given in response to the officer's question (asking if he would stop making book at this location), was not—when viewed in the light of the ''total situation'' presented (see *People* v. *Stewart,* 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97])—elicited by any interrogation.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied May 4, 1966, and appellant's petition for a hearing by the Supreme Court was denied June 17, 1966.